because as I call our third case, we have both of you as repeat players. And Ms. Gunn, I'm gonna do the best I can. Raul Pelaez versus Geico. And again, we have Ms. Gunn and Mr. Thompson. And again, Ms. Gunn, you have reserved five minutes for rebuttal. So if Ms. Gunn, if you are ready to proceed, we can shift gears and move on to this case. Yes, Ron, thank you. May it please the court, Tracy Gunn for the appellant, Raul Pelaez. This case does raise the same Coghorn consent judgment issue. And whether the statements in Coghorn that Florida Law Group require a verdict and that the insurance company be a formal party to the judgment are correct statements of Florida law. It involves different facts regarding the agreement and additional issue regarding equitable estoppel. And it's also procedurally somewhat different because the district court actually did make a finding in the alternative that Geico as a matter of the law was not in bad faith. And Ms. Gunn, why don't, off the bat, why don't you tell me why this case isn't moot under Cope? Yes, Your Honor. The simultaneous release issue as it's been referred to by opposing counsel, we would direct the court to the Florida Supreme Court case of Wachovia versus Toomey, which was on a certified question from this court, where the Florida Supreme Court made clear that Cope in saying that there had to be a judgment against the insured prior to the release, the Florida Supreme Court admitted that that was maybe some loose language and expressly held that it can be simultaneous. First, that it can be in the same document. And secondly, the Florida Supreme Court said, even if we did have a Cope problem in this case, if it's clear that the parties intend to pursue the insurance company, we're not gonna preclude it by the fact that this document was signed at the same time because that would be manifestly unjust. So it's our position that we have both factors here, Your Honor. And that's the Wachovia case from the Florida Supreme Court subsequent to Cope. So briefly addressing how the agreement in this case differed from the agreement in the Pratt case. In the Pelez case, it was in the middle of trial and there was an on-the-record involvement by Geico's own representatives and not just the defense attorney. It's our position that Geico in this case is equitably stopped from taking the position that the judgment entered by consent of the parties is not sufficient to support the bad faith case because it's clear from the record, especially taking the facts in the light most favorable to Mr. Pelez, that the plaintiff would have gone ahead and taken the verdict had Geico not agreed to the consent judgment. They were five days into trial. All evidence in the cases, the verdict could well have exceeded the amount of the consent judgment. The plaintiff previously refused a proposal. I'm sorry, the insured previously refused a proposal from the plaintiff to enter into consent judgment when Geico wouldn't allow it and said, we're not gonna do that unless Geico allows it. So Geico should not be now able to argue that there has to be a verdict under Cawthorn. And for equitable estoppel, we'd refer the court to the Morsani case from the Florida Supreme Court. If this court doesn't have any questions about the specific facts of the agreement in this case, they can move on to the issue of the finding of no bad faith as a matter of law. This is a situation where we're dealing with the proposed release issue. The claim that Geico makes is that they tendered the limits quickly and with a release and that they said, you can change it. So that- Don't forget about the check. Right, sorry. They sent the policy limits. They sent only the BI policy limits. And that's, this case is specifically very narrow on its facts. It's whether tendering with the payment of the bodily injury only limits, a form of release that the insurer knows in all claims release that Geico specifically knew because of other Florida cases and based on its testimony from its claims people, Geico knew that you can't use an all claims release where there's a property damage claim also pending and you're trying to settle just the BI claim. They sent it anyway. With a letter saying, if you've got any problems with the release, we're here for you. Right, that's exactly true, Your Honor. The letter said, sign it. Here, we think this release is correct, but if you have any problems, you can let us know what they are. So the issue is whether saying you can modify the release is enough where number one, we know this is a Powell case. There's an affirmative duty to settle under Florida law because it's catastrophic injuries and clear liability. Geico is using a release form that has a known defect that's risking not settling the claim on behalf of the insured that they know applies to the facts of this case. And it's an attempt, why would they use that all claims release? It was not unreasonable at all for them not to include a settlement for the property at that time, correct? No, Your Honor, the... No, Your Honor, it wasn't. Or no, Your Honor, the premise of your question is wrong. Your Honor, it was not reasonable for Geico to include a property damage. No, not my question. Okay. They have an obligation to settle. Yes. It's not unreasonable for them not to tender a settlement offer as to the property damage. Correct, yes. As a matter of fact, it wasn't unreasonable for them not to do that for five and a half years because they couldn't inspect the property. Yes, Your Honor, there was an issue about the PD claim because of a possible products liability claim. And there was a reason why the plaintiff would not release- Entirely reasonable. And then they send the settlement form and say, let us know. Right. Mr. Gordon doesn't say, let us know. He says, my client and I are crusading for humanity. We're going to protect future generations, born and unborn, the predations of insurance companies. And this is why I exist on this. I've read his deposition testimony. And if anybody has ever overplayed a role, I'd like to nominate Mr. Gordon for that. I'm not criticizing him, that's what advocates do. But let me ask you this hypothetical, and I am so glad that you're the quality of lawyer who won't argue with me, but that's not the facts in this case. I ask it as a hypothetical because it's not the legal facts in the case. Legal facts, you use an oxymoron. But suppose this was a jurisdiction opposite from Florida. No bad faith causes action. No covalence, no nothing. If you got shafted by your insurance company, your only remedy was to sue them for the policy coverage, period. Now, if that had been this jurisdiction, Mr. Gordon had gotten that letter on behalf of the guardian of the injured party in this case. Wouldn't any lawyer who's obligated to advocate his client's interest have responded and said, wait a minute, that form release covers property damages, any and all claims. Pursuant to your invitation, I have scratched that out and said, accept property damage. Wouldn't he have done that? Wouldn't he have had an obligation to his client to do that, but for the prospect of a tremendous multiplier into the millions and more than $10 million for a bad faith claim? Your Honor, certainly the obligation to increase or to maximize the value of the claim to the client in Florida law includes the idea that a bad faith claim exists. So yes, with this- No, but not in my hypothetical jurisdiction. See, I complimented you too soon. I'm sorry. Would the situation be different if that value to the client were not there? Yes, of course it would be. And wouldn't he be obligated to accept the offer to correct the release form? Your Honor, I don't know that he would be obligated if there's not a- In the best interest of his client. He is- Advocate the interest. Why would anybody who has offered the policy maximum for the covered claim and not cover any other claims, the damage, property damage, why would that person say, no, I don't like trying cases. I'm gonna put my client through that and I'm gonna waste my time doing that when all I have to do is modify that release and we're happy. I think that's a valid point, Your Honor. I do think that the existence of the extracontractual remedy in Florida makes it a different situation than in a jurisdiction where that remedy- So the only reason, the only rational reason, the only reason consistent with your ethical duty to advocate your client's interest in getting as much as the client can get is the bad faith judgment possibility. Well, Your Honor, certainly the interest, it would have been contrary to the client's interest in either jurisdiction to go ahead and execute the release- I know, but it would have been consistent. It would also been inconsistent with the client's interest to say, no, we reject it. I don't wanna modify the form. We'll see you in court. Yes, Your Honor. I agree to that. So my point is the reason he didn't modify the form is he wanted to build a bad faith case. Your Honor, and we would direct the court to this court's recent decision in Aldana where the court emphasized that whether the insurance, whether the claimant's attorney does or doesn't say what's wrong with the release, is motivated by whatever, is not for the court to evaluate, certainly on summary judgment of bad faith. The Florida Supreme Court in Burgess and Harvey made clear that the focus has to be on the actions of the insurance company. And that's exactly what this court held- I say that is distinguishable. I know the case you're talking about. And I just think, and this may just be in me wanting to write something that doesn't directly pose a case in the concurring opinion, but this is not a wise system compensation and protection, which pits one side into saying, oops, slip up, pay me $12, $14 million. And it generates, you end up with a decade of litigation and you end up with people talking after a decade of litigation, years and years of litigation. Let's certify this to the Florida Supreme Court. And in a year or so, we'll have it back before us and we'll ask for supplemental briefs as opposed to getting the injured party, the policy limits and being unnecessary litigation. It is my, you know. Yes, Your Honor. And certainly you're not the first judge to have expressed those frustrations, but the law in Florida is what it is. And the fact is that GEICO, when faced with the law in Florida at the time, had just been hit with two cases from Florida's District Courts of Appeals saying you can't be using these all claims releases in a case where you're only settling the bodily injury claim. And focusing on the actions of the insurance company and the motivations of the insurance company as the Florida Supreme Court indicated in Harvey and Burgess, as we should, the GEICO's, the only party that benefited from using this all claims release was GEICO. So this is not a situation- Ms. Gunn, you seem to be going off on a new argument. And so I'm gonna cut you off there. You have five minutes for rebuttal and I'm gonna turn to Mr. Thompson. Yes, Your Honor, thank you. Thank you, Your Honor. Jordan Thompson on behalf of GEICO. The court should uphold summary judgment in GEICO's favor for three particular reasons. The first reason, and I think we filed a motion to dismiss, which this court has entered an order carrying it with this case. So I believe based on the fact that I think there's no case in controversy related to the claim, asserting a bad faith claim, the summary judgment or this motion, this appeal should be dismissed. The other two reasons- That goes to the question that I asked your opposing counsel at the beginning. You would say that it is moot under Cope. Well, the two things, I think it's moot under Cope. Yes, Your Honor, I think it's moot under Cope particularly because Cope expressly says and holds that the claimant, while they may be able to bring a third-party bad faith action in their own name without an assignment under Thompson, they don't have an independent cause of action any greater than the insured. So they essentially step in the shoes of the insured. What happens oftentimes is that the claimant will bring the bad faith action in their own name under Thompson, but most of the time they've obtained an assignment. Factually, in this case, what happened is that Mr. Peleas asserted the bad faith action in count one under Thompson as the judgment creditor, Mr. Conlin, the insured, asserted a bad faith action under count two as the insured. During the litigation, the court knows the summary judgment was entered on counts one and two. Mr. Conlin did not appeal the judgment that was entered against him on his bad faith count. Mr. Peleas did. So because the judgment is final, finding no bad faith as a matter of law related to the guy who's handling of the insured's claim, I believe under Cope, as we've set forth in our motion to dismiss, would apply in that there's no case in controversy or essentially standing for the claimant to proceed on this appeal. The second two basis for upholding the summary judgment is one under the Cawthorn decision that the claimant has not obtained an excess judgment or its functional equivalent. I know we've talked about that in extreme depths in the prior appeal that we just had. And the second alternative is because the undisputed material facts show that Geico did not act to bad faith as a matter of law. I'd like to take the second part, the second basis and pick up where the question from Judge Carnes. In this case, and like all the cases that we have cited, an insurance company that provides arguably an overbroad release with a willingness- It was overbroad. Yes, your honor, it was overbroad. Okay. Provided an overbroad release. We can't hear you. I apologize. The factual distinction here is that the cases that have upheld summary judgment as a matter of law in bad faith actions in which an insurance company has responded to a demand, in which the demand expressly had conditions of settlement related to release language, the insurance company has responded to that demand condition with the tendering of the limits and an overbroad release. But when the insurance company did so, the insurance company also advised that they would be willing to make changes and they would work with the claimant to make those changes. And subsequently, settlement was rejected. And the argument was a counteroffer under contract law. And the basis for the court's decision in the Martin case, which I know Judge Carnes was on, and also the recent opinion that was published by this court in June in the Aries case, was that even if an insurance company provides an overbroad release, the issue of bad faith is determined under the totality of circumstances. And so in this case, the factual distinction is that there was no demand that was made. And if you look at the facts, GEICO proactively tendered the policy limits without receiving a demand, the full $50,000 policy limits. They did provide a release that included all claims. It did not include the word property damage, but it said a release of all claims, including bodily injury and damages. Now, the factual difference in this case is that Mr. Gordon knew that GEICO was actively trying to resolve the property damage claim, that GEICO had separate policy limits coverage of $50,000 for the property damage claim. And when GEICO tendered its policy limits, the cover letter indicated that the tender was for bodily injury only. The check indicated that it was for bodily injury only. And so for the argument, which is the only basis to support the Mr. Pelaez's bad faith claim, is that Mr. Gordon's position is that GEICO was trying to take advantage of its clients. And we know that factually that's inaccurate because of the fact that GEICO clearly advised that it would want it to resolve the case, not only for the bodily injury policy limits, but under the separate coverage limits for the property damage. And the significance here factually, which is undisputed in the record, is that upon receiving Mr. Gordon's rejection, in which Mr. Gordon accused GEICO of trying to take advantage of his clients, he actually acknowledged that he could very well work with GEICO and he acknowledged that he could modify that release. However, as Judge Cards alluded to, he took the position with his clients that they needed to do essentially justice for what they believed was GEICO's improper business practice, which isn't supported by the record and I don't think has ever been supported by GEICO. But in response to that, which is very significant here, the adjuster responded, clearly advised that he was confused, that he disagreed that they were trying to extinguish the BI and PD claims for only the payment of $50,000. He set forth how many times that he's been trying to get ahold of Mr. Gordon related to the property damage. And he reminded Mr. Gordon that the property damage was separate and that GEICO would settle it separately. And he again invited Mr. Gordon to make changes to the release and settle the BI claim. What's more significant is after the property damage ultimately settled, GEICO continued to try to resolve the case and they still refused to settle for the BI policy limits. So I think based on this case, based on the ARIES decision, which is published related to overbroad releases that are sent in response to demands, that this court should uphold the well-reasoned opinion of the district judge. Why does GEICO have that release? It covers all claims and that's the only release it gives their claim examiners or settlement people. Well, specifically at the time, because the claims examiners are prohibited. They're not lawyers of drafting releases. So they have, as it relates to form releases that have been pre-approved for depending on what type of cases they are. If it has a consortium element, if it's just property only and all that, this was at the time the form release specifically for bodily injury. It didn't include the word property damage, but it did include bodily injury and damages and it was a release of all claims. So the fact is that to be proactive and to initiate settlement negotiations and try to resolve cases quickly, GEICO has form releases that it allows its examiner to send out conveying that the release is a proposed release to try to resolve cases. And in this case, what you'll see is factually, the adjuster said, not all, this is a form release that's proposed, not all releases precisely fit the facts of the case. Please make any changes and we'll work with you with a release. Does GEICO have a form release that says, this release is only the bodily injury claim? At the time, I don't believe so. I think this was the form release that they were directed to use. I believe subsequent, for example, today, they may have multiple different releases, but at the time this was the, and this was a testimony was the form release that examiners were requested to use for bodily injury with the- I assume you didn't draft that form release as independent counsel for them. No, your honor, I was not involved at the time in the underlying action or drafting releases for the company. With that being said, your honor, I would like to just touch base quickly back onto the excess judgment and the functional equivalent related to Cawthorn. I think that the court has asked several questions and the appellate has made an argument that this is essentially no different than a Colvin's agreement and or a Cunningham agreement. And I think factually, that's just inaccurate. The court in Cawthorn and also the Schultz court expressly analyzed whether the Florida courts would recognize this type of agreement as being essentially a functional equivalent. And the Cawthorn decision explained that it's unlikely that Florida courts would approve an agreement like the one in Cawthorn. And they went on to say, quote, only Colvin's agreements allow the insured and the third party claimant to determine an insured's excess exposure independently. It is the company's refusal to defend leaving the insured at his own devices to protect himself in the best way possible that triggers the insured's rights to settle without a consent of the insurance company. And I think the district court in Cawthorn went on to say that, thus what Cawthorn is asking this court to do is forge a completely new type of vehicle not recognized by Florida courts as a basis to bring a third party bad faith claim. Under this proposal, injured plaintiffs and insured's tort feasors could enter into agreements, binding the insurers to pay the bad faith damages even when the insurance companies were fulfilling their obligations to defend. And I think that's the distinction here is that they're arguing or what's being argued to this court is that you should disregard the basis and the analysis of Florida Supreme Court on why we allow Colvin's agreements to be the functional equivalent because it doesn't matter if the insurance company is defending or not. As long as we enter into this agreement, it should be binding because it's essentially a judgment in the general terms. I mean, I think that's just contrary to Pereira and even I think the Cawthorn court's analysis was correct. So for those reasons and the reasons submitted based on the argument and the legal authority submitted in our brief, we would ask that this court, if there's no further questions, uphold some of the judgment and affirm the decision by the district court in Geico's favor. One more thing, I apologize. There was an argument made related to PAL and how an insurance company does not have to, in PAL stands, it's PAL v. Prudential. It stands for the proposition that in a third party bad faith action, an insurance company doesn't have to receive a demand that it's obligated to initiate settlement negotiations where liability is clear and damages are likely to result in excess judgment. And in this case, I think that it was representative, this was a PAL case. PAL would only apply in this case if the argument, which has not been made before this court, was not made before the underlying court, was that Geico acted in bad faith in some type of delay in tendering the limits. The argument that has been made is Geico acted in bad faith in tendering the limits. So I think this PAL has no application and what the argument is in the court's analysis should follow the case law related to Aries and even the Martin Court, which is addressing the issue of whether providing an overbroad release is the basis for bad faith. And I think on these undisputed facts, as rightfully found by the district court, the answer is that no reasonable juror could find bad faith. And for those reasons, amongst all the ones that I've already argued to the court, the court should affirm summary judgment. Thank you. Thank you, Mr. Thompson. Ms. Gunn, you have five minutes for rebuttal. Yes, Your Honor, thank you. Addressing first the issue about the Aries case and the ability to change the terms of the release, Aries was filed as supplemental authority and we filed a response. The difference in Aries was that the insurance company in that case had no reason to believe that the release that they proposed was going to be a problem. In this case, and the court relied on that fact in deciding that there was no bad faith. And again, in Martin versus Allstate, where there was the issue about the Aries and Assigns release, this court said Allstate had no reason to believe the language was problematic when they sent it. This is a very narrow factual situation where Geico had every reason to believe and actual knowledge that using this All Claims release was going to be a problem. There were cases, it was 2012, two cases came out from the Florida District Courts of Appeal at the time that Geico was adjusting this claim that said, you can't do this. And Geico's depositions in this case of both their corporate rep and the claims manager confirmed that Geico was aware prior to the time they were adjusting this claim that claimants had objected to these All Claims releases and that they had gotten advice that they should not be used in BI only claims, but the adjusters had no other option. Geico required this overbroad release to be used. So that's the narrow set of facts we're dealing with here. Our position is that this was a business practice of Geico to use this and that it benefited only Geico. There was no way this was going to benefit the insured to send this overbroad release because Powell doesn't just say you have to offer the limits quickly. It says you have to try to settle the claims against the insured. You have to make affirmative steps to try to get the case settled and protect the insured. That's the bottom line of the duty of good faith in Florida and tendering a release that you know, because you've been a party to cases where it's become a problem with settlement enforcement, tendering a release that's not going to settle the claim that's going to lead to the plaintiff's attorney having a window, if we want to call it that, Judge Carnes of being able to say, no, sorry, I'm not taking it. And moving on does not protect the insured. The argument was made in the brief that this idea of the all claims release is just a settlement enforcement issue and not a bad faith issue. And we would point the court to the Levine case from the third district, which says that using an all claims release in a situation where that is clearly overbroad is evidence of bad faith. In terms of waiver of conditions and permission and the idea of whether this is or isn't an excess judgment counsel cited to the Schultz case. There are in fact two Schultz cases, a 2016 case and a 2018 case. And the 2016 case held that in a consent judgment case where the insurance company, Grico, was not a party, there was a question of fact in the bad faith case. They didn't say that's not an excess judgment. In the 2018 case, which is what counsel was reading from and quoted extensively in their brief, the court said, no, this isn't sufficient for bad faith. But the key facts that they've omitted is that the parties in that case somehow never actually entered the judgment. And that was the basis for the ruling in the 2018 case in Schultz. The fact remains that this is a judgment and it isn't excess in the policy elements. Addressing just briefly the motion to dismiss and the mootness issue, I can rely on our response to the motion to dismiss for that. But essentially, I guess there's two different arguments here and I've already addressed the issue of the release simultaneous being with the assignment, but the idea that Mr. Conlin not appealing somehow impairs the rights of the plaintiff to appeal our position is that the third party rights already vested and that whether a co-party does or doesn't take an appeal cannot impact that. And I think that that's explained in our response to the motion to dismiss, but if the court has questions about that, I'm happy to answer them. In conclusion, we would ask the court to reverse and in the alternative to certify these Cawthorn issues and any potential limitations on Cawthorn to the Fortis Proof Part. Thank you both. Thank you for arguing both of these cases. We also have this one under submission.